

**FILED**

**MARCH 7, 2008**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CURTIS M. ARCHIBALD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-0065 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff CURTIS M. ARCHIBALD brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

Plaintiff filed an application for SSI benefits on July 30, 2002, alleging he became disabled

on September 15, 1999.[1]  (Tr. 52-55).  Plaintiff alleged he was unable to work due to mental

problems, hepatitis B and C, diabetes, a sleep disorder, severe acid reflux, digestion problems, chest

pain, and back problems.  (Tr. 52, 65).  At the time he filed his application, plaintiff was 47-years-

old.  (Tr. 71).  Plaintiff had obtained a GED and identified past relevant work as an oil derrick hand,

working eight (8) hours per day, seven (7) days a week, and as a mechanic, working eight (8) hours

per day, six (6) days a week.  (Tr. 81-82).

The Social Security Administration denied benefits initially and upon reconsideration.  (Tr.

32-39; 42-47).[2]  An administrative hearing was held before an Administrative Law Judge (ALJ) on

February 25, 2004.  (Tr. 476-505).  Plaintiff was represented at the hearing by an attorney.  At the

hearing, plaintiff's attorney explained he had drafted a memorandum letter/brief on plaintiff's

behalf, but had failed to bring it to the hearing.  On March 2, 2004, counsel supplemented the

record with his letter wherein he stated plaintiff had "received no less than 22 diagnoses of

---

[1]Plaintiff subsequently alleged he became unable to work because of his conditions on July 1, 2002.  (Tr. 65).  Plaintiff identified self-employment work from May 2002 - November 2002, described as "picking up carpet padding and aluminum" for recycling.  (Tr. 113).

[2]On initial review, the Administration, diagnosing plaintiff's impairments as "hidradenitis of the left scrotum and bipolar disorder," determined plaintiff's condition was not severe enough to keep him from working, stating:

> You said you were disabled because of acid reflux, digestive problems, a scrotal abscess, back problems, hepatitis, diabetes, and a sleep disorder.  However, your current symptoms are not severe enough to be considered disabling under Social Security Guidelines.  You also said you were disabled because of depression.  This has not seriously affected your ability to understand, remember or be around other people. . . . [T]he evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition does not limit your ability to work.

On reconsideration, the Administration, citing the same diagnosis as on initial review, again determined plaintiff's condition was not severe enough to keep him from working, stating:

> You said you were disabled because of rotation cuff injury, groin wound, acid reflux, hepatitis, back pain, diabetes, and a sleep disorder.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  You also said you were disabled because of a bipolar disorder.  Your doctor has prescribed medicine that is expected to allow you to carry out your normal daily activities with a few restrictions despite this problem. . . . [T]he evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition does not limit your ability to work..

significant impairments" and then listed the following (1) bipolar syndrome, (2) hepatitis B, (3) diabetes mellitus, type 2, (4) sleep apnea, (5) gastro-enteritis, (6) dumping syndrome, (7) dessication, (8) arthritis, (9) degenerative disc, (10) osteoarthritis, (11) cervical/lumbar facet arthropathy, (12) tension headache, (13) advanced degenerative changes of L5-S1, (14) torn rotator cuff, (15) rotator cuff repair, (16) rotator cuff (re) repaired, (17) complete undoing of previous surgery, (18) chronic viral hepatitis B, (19) chronic viral hepatitis C, (20) anxiety state, (21) hx. of peptic ulcer, (22) rheumatoid arthritis, and (23) flare up of gall bladder.

On April 29, 2004, the ALJ rendered an unfavorable decision, concluding plaintiff was not disabled at any time after his alleged onset date and through the date of his decision. (Tr. 14-22). The ALJ, noting the general issue to be whether plaintiff was entitled to SSI payments and the specific issue to be whether plaintiff was under a disability as defined by the regulations, identified another issue, raised by the record evidence of "at least a past history of alcohol and polysubstance abuse," to be whether plaintiff was affected in his ability to work by either alcoholism or drug abuse.

The ALJ noted plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). The ALJ noted plaintiff claimed he was unable to work due to multiple impairments and a "wide variety of symptoms," but found "[n]o two disability reports in the case file list the same medical or psychological conditions" and that plaintiff's "reports concerning his symptoms and his functional limitations vary widely throughout the record." The ALJ also referenced the post-hearing letter from plaintiff's attorney wherein counsel added bipolar syndrome and "anxiety state" as additional mental impairments. The ALJ found counsel, in his letter, also added a number of physical conditions that plaintiff had not described in his disability reports or in

his testimony at the hearing. The ALJ found that for several of the physical conditions listed in counsel's letter, there was no evidence to suggest they had more than a minimal effect on plaintiff's ability to perform work activities at any time during the period under review, <u>or</u> were not established by the medical evidence in the record. The ALJ stated he declined to address "each and every one of [counsel's] claims on his client's behalf or, for that matter, the many other claims [plaintiff] has made during these proceedings."

The ALJ, noting plaintiff's complaints of back pain and limitation had been scattered and inconsistent throughout the record, nonetheless found there was evidence of abnormalities in plaintiff's lumbrosacral spine attributable to degenerative disc disease. The ALJ, however, found no medical evidence to support plaintiff's claim that he sustained a herniated nucleus pulposus or herniated disc. (Tr. 18).

The ALJ noted X-ray evidence of mild degenerative joint disease in plaintiff's right shoulder, but no evidence that plaintiff underwent the physical therapy ordered for the condition. The ALJ also found the medical evidence reflected problems in plaintiff's right upper extremity had resolved, but that plaintiff had continued to complain of pain in his shoulder and had requested narcotic pain medications even though examining physicians could find no objective cause for his complaints. (Tr. 16).

The ALJ noted that although plaintiff's counsel had suggested that plaintiff is disabled by rheumatoid arthritis, plaintiff had not made such a claim to the Administration. (Tr. 18). The ALJ noted plaintiff had told several health care providers that he has rheumatoid arthritis, but that the medical record did not reveal any objective medical evidence to support a diagnosis of inflammatory arthritis. (Tr. 19). The ALJ found a tentative diagnosis of "acute recurrent

inflammatory arthritis, but found no "consistent, ongoing treatment for inflammatory arthritis during the period under review."  (Tr. 16).

The ALJ found the evidence established plaintiff developed dumping syndrome after a surgery in 1997.  The ALJ acknowledged plaintiff's testimony that he must go to the bathroom within 15 minutes of eating, and that he must go to the restroom every 15-30 minutes throughout the day and that he has severe abdominal cramping whenever he goes to the bathroom.  The ALJ found no medical evidence in the record to support plaintiff's claim of a spastic colon.  The ALJ also found plaintiff's complaints to his health care providers did not reflect such severe ongoing problems, namely his occasional complaints of abdominal pain and the tests conducted in response thereto, did not reveal significant abnormalities.  (Tr. 16).

The ALJ found the medical evidence reflected plaintiff has diabetes mellitus, but that the diabetes was not a severe condition.  The ALJ also found, based on the medical evidence and plaintiff's testimony, that plaintiff failed to follow the prescribed diet, weight loss, and exercise treatment for his diabetes and other gastrointestinal problems.  The ALJ determined there was sufficient evidence to suggest that if plaintiff would follow his doctors' recommendations, he would have much better control and could avoid future problems regarding his impairments.  The ALJ concluded the evidence supports a finding that neither dumping syndrome nor diabetes cause significant limitations in function "so long as [plaintiff] follows the recommendations and takes the medications prescribed by his doctors."

The ALJ noted plaintiff had been diagnosed with chronic obstructive pulmonary disease (COPD) and that plaintiff's doctors had repeatedly advised him that his heavy smoking caused the symptoms associated with his COPD, to wit: shortness of breath and decreased stamina, of which

he intermittently complained. The ALJ found no evidence in the record to support plaintiff's testimony that he has asthma or was using an inhalant medication. The ALJ noted that in June 2003, after plaintiff developed hypoxemia and was placed on 24-hour oxygen, plaintiff told an examining physician that his condition and the treatment was one of the reasons he could not work. Plaintiff, however, did not have the oxygen with him in the clinic. Further, plaintiff's condition resolved within one month. The ALJ noted that at the time of the hearing, plaintiff had failed to follow his doctors' repeated recommendations that he stop smoking and was still smoking a pack and a half a day, a recent decrease from 2-4 packs a day.

Noting plaintiff's allegations of mental impairments of bipolar disorder, depression and anti-social behavior, the ALJ found that if plaintiff does have mental impairments, apart from prescription narcotics abuse, these impairments were asymptomatic during the period under review and did not have a significant impact on plaintiff's ability to perform mental work activities. Citing treatment notes of plaintiff's treating psychiatrist, the ALJ found plaintiff had been seeing a psychiatrist for many years for prescription of psychotropic medications and that all but one of the psychiatrist's treatment notes indicated plaintiff had done very well, from a psychiatric point of view, throughout the period under review. The ALJ also found the treatment notes did not reveal plaintiff had any significant functional limitations related to a psychological disorder, noting the treatment notes generally, instead, described plaintiff's physical problems. In a September 2002 treatment note, however, wherein the psychiatrist found plaintiff was affected in his ability to work by his psychological condition and could not hold gainful employment, the ALJ noted the treatment note did not include any description of significant psychological symptoms and did not describe any specific limitations on plaintiff's ability to perform basic mental work activities. The ALJ also

noted the treatment notes did not reflect any awareness of the concerns expressed by plaintiff's other health care providers about his use of prescription narcotics. The ALJ noted plaintiff did not complain about psychological problems to his other doctors and that there were no treatment notes by any of plaintiff's health care providers, including his psychiatrist, that concerned any unusual behavior or psychological manifestations exhibited by plaintiff. (Tr. 17-18).

The ALJ found plaintiff had misrepresented his current and past use of illegal drugs and prescribed narcotic pain medications to the Administration and to his health care providers. The ALJ further found petitioner was not entirely credible with regard to the medical conditions he claimed to have or that he experienced the pain he described. The ALJ noted plaintiff's doctors had expressed concern that plaintiff was exaggerating the intensity and persistence of his symptoms in order to obtain narcotics, and had noted repeated instances of drug seeking behavior throughout the period under review. The ALJ noted plaintiff's testimony that he was unable to obtain pain medications from his doctors because they believed he was a "druggy." The ALJ noted that when plaintiff's primary care physician refused to give plaintiff a prescription, plaintiff obtained the prescription from another doctor. The ALJ also noted that although plaintiff testified he was no longer taking Hydrocodone, that the medical record revealed orders for Hydrocodone as late as February 2004, although under another trade name. (Tr. 18).

The ALJ noted inconsistencies between plaintiff's testimony that he does not drive because his license was suspended in 1997 for a DWI, and plaintiff's statement to his primary care provider in 1999 that he does his own driving. Further, although plaintiff had stated he stopped drinking alcohol in June 1998, his primary diagnoses in July 2003 were narcotics abuse and alcohol abuse. (Tr. 18).

The ALJ found plaintiff's degenerative disc disease affecting his lumbrosacral spine is considered "severe" under the Act because it has more than a minimal effect on his ability to perform basic work activities. The ALJ found, however, that the evidence of record did not establish the existence of an impairment or combination of impairments meeting or equaling the severity of any impairment described in the Listing of Impairments. The ALJ specifically compared plaintiff's lumbrosacral spine problems with the severity criteria in Listing 1.04 which described listing level spinal disorders. The ALJ explained that as the medical evidence did not support a diagnosis of inflammatory arthritis, that he did not consider whether plaintiff's complaints of back and joint pain met the severity criteria in Listing 14.09. (Tr. 19).

The ALJ found the medical record established the existence of other impairments, but did not find evidence to support a finding that these other impairments had more than a minimal impact on his ability to function. The ALJ stated he did, nevertheless, consider the current combined impact of all of plaintiff's medically determinable impairments, both severe and non-severe, in assessing his RFC. (Tr. 19).

In assessing plaintiff's RFC, the ALJ noted he considered all of plaintiff's statements of record concerning his symptoms, including pain. The ALJ noted, as described previously, that plaintiff had made many contradictory claims in his disability reports, among his complaints to his various treating physicians, and in his testimony at the hearing. The ALJ opined that there were "so many contradictory and inconsistent statements in [the] record that it would be impossible to relate more than a few" in his decision. Assuming plaintiff made such statements for the purpose of obtaining SSI, the ALJ noted there was some evidence in plaintiff's medical record that plaintiff had attempted to manipulate his medical history in an effort to document medical problems he does

not have or to make his problems appear to be more severe. The ALJ found plaintiff's medical records, however, clearly revealed plaintiff had misrepresented his medical condition and history to his health care providers in an effort to obtain narcotic pain medication.

The ALJ summarized plaintiff's hearing testimony to be that he cannot sit longer than 15 minutes, stand longer than 10 or 15 minutes, walk more than one and a half blocks, lift more than 30 pounds, or climb stairs without a railing. Further, that he is entirely unable to kneel, bend, or squate because his hips, knees and ankles are "bad," and that he had been advised to avoid direct sunlight because of one of the medications he was taking. The ALJ found only some of these limitations were supported by medical or other evidence in the record. The ALJ noted inconsistencies in plaintiff's testimony concerning the use of his hands and his ability to grip objects. The ALJ noted plaintiff's testimony that he naps for up to two (2) hours during the day, and his testimony of mental limitations, including an inability to get along with co-workers and problems with his memory and comprehension of work instructions, specifically, plaintiff's testimony that he cannot remember and carry out more than one step of a work task at a time. The ALJ reiterated that the only mental impairment evidenced in the medical record which might cause such mental limitations was plaintiff's substance abuse or dependence. Noting the only evidence in the record to support plaintiff's claims of limitations were his own statements in his disability reports and his hearing testimony, the ALJ found plaintiff's allegations were not credible. (Tr. 20).

The ALJ further noted that, in assessing plaintiff's RFC, he also considered medical opinions in the record from plaintiff's treating physicians as well as the opinions expressed by the psychological experts who reviewed plaintiff's records for the Administration. Referencing his previous discussion of the one-time opinion of plaintiff's psychiatrist and his reasons for rejecting

that opinion, the ALJ found the only other expressions of opinion by plaintiff's doctors suggested the nature and severity of his impairments, and resulting limitations, were not disabling. The ALJ specifically cited plaintiff's requests for statements from his doctors that he cannot work on at least two occasions during the period under review, and the response of one of his doctor's that he could not indicate plaintiff was disabled. (Tr. 20).

The ALJ determined, except for very short periods of time during the period under review, plaintiff has had the RFC for the full range of at least light work. The ALJ noted plaintiff's testimony supported the lifting requirements of light work. The ALJ specifically rejected plaintiff's claim that he is significantly limited in his ability to sit, stand or walk, noting plaintiff had failed to establish the existence of a medically determinable impairment that would prevent him from sitting, standing, or walking for long enough periods of time to perform light work. (Tr. 20).

Given his restriction to light work, the ALJ found plaintiff is unable to perform his past work as an oil derrick hand or mechanic. The ALJ noted plaintiff was considered a younger individual during the times at issue, had a graduation equivalency degree, and past work as an oil derrick hand and mechanic. The ALJ could not determine from the evidence of record whether plaintiff had acquired any work skills that were readily transferable to the skill requirements of skilled or semi-skilled light work. Nevertheless, the ALJ determined plaintiff would not require any work skills to make a satisfactory adjustment to the unskilled, light jobs evidenced in the Medical-Vocational Guidelines. The ALJ determined, considering plaintiff's age, education and work background, together with his RFC for light work, that Medical-Vocational Rule 202.20 applied and directed a determination of not disabled. The ALJ found plaintiff was able to make a satisfactory adjustment to jobs that exist in significant numbers in the national economy. The ALJ

concluded plaintiff was not "disabled" within the meaning of the Act and not entitled to

Supplemental Security Income based on disability. (Tr. 20-21).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support the

Commissioner's factual findings and whether any errors of law were made. *Anderson v.*

*Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of

disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses

and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and

disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126

(5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the

Commissioner's findings are supported by substantial evidence, they are conclusive, and the

reviewing court may not substitute its own judgment for that of the Commissioner, even if the court

determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d

1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not

the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence

of credible choices" or "no contrary medical evidence" will produce a finding of no substantial

evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*.

The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do

this, and the case comes to federal court with the issue being limited to whether there was

substantial evidence to support the ALJ decision.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether the proper legal standards were applied in making this determination. To this extent, plaintiff appears to present the following issues:

1. The ALJ's failure to acknowledge the shifting of the burden of proof to the Commissioner when he determined plaintiff could not perform his past work is reversible error, and the ALJ's subsequent determination that there are a significant number of jobs suitable for plaintiff existing in the national and regional economies is not supported by substantial evidence;

2. The ALJ's finding that plaintiff has the RFC for light work is not supported by substantial evidence because the ALJ did not contradict the evidence of plaintiff's multiple impairments;

3. The ALJ failed to adequately consider the combined effect of plaintiff's multiple impairments;

4. The ALJ's credibility determination is not supported by substantial evidence.

IV.
MERITS

A.
Shifting of Burden

Plaintiff first argues the ALJ, although admitting plaintiff had proven his inability to perform any past relevant work, failed to specifically acknowledge the shifting of the burden of proof to the ALJ to show not only that plaintiff has the RFC to perform work, but that such work also exists in significant numbers in the economy. Plaintiff thus concludes the ALJ's determination

that plaintiff retains the RFC to engage in substantial, gainful activity in occupations existing in significant numbers in the national or local economy is not supported by substantial evidence because of the ALJ's failure to "specifically acknowledge the shifting of the burden of proof to the ALJ" to go forward with the evidence to show plaintiff has the RFC to perform other work, and that such other work exists in significant numbers in the economy. Citing *Ulrick v. Heckler*, 780 F.2d 1381 (8th Cir. 1985), plaintiff contends the Eighth Circuit has held the ALJ's failure to specifically acknowledge, in his decision, the shifting of the burden of proof at this stage of the proceedings is reversible error. Plaintiff acknowledges the Fifth Circuit has yet to hold that the failure to acknowledge the shifting of the burden of proof is per se reversible error, but argues if presented with the question, the Fifth Circuit would so hold. Plaintiff concludes this Court should reverse and remand this case to the ALJ due to the failure to acknowledge the shifting of the burden of proof to the ALJ.

Here, the ALJ did, however, specifically acknowledge the shifting of the burden of proof to the Commissioner after he found plaintiff could not perform past relevant work. (Tr. 20). The ALJ stated, "[o]nce a claimant has established that he lacks the residual functional capacity to return to his past relevant work, the burden shifts to the Administration to show that, considering his age, education, and work background, he is nonetheless able to perform other jobs that exist in significant numbers in the national economy. That determination is made in conjunction with the Medical-Vocational Guidelines in Appendix 2, Subpart P, Regulations No. 4. Appendix 2 contains a series of rules that direct a conclusion of either disabled or not disabled, depending upon the claimant's age, education, work experience, and residual functional capacity."

Secondly, even if the ALJ had not specifically referenced the shifting of the burden of proof

to the Commissioner, plaintiff has not shown this Court, under Fifth Circuit precedent, should find such failure to be reversible error.

Lastly, the ALJ met his burden of proving there were a significant number of other jobs in the economy plaintiff could perform by relying upon the medical-vocational guidelines, *i.e.*, the Grids.  *See Perez v. Heckler*, 777 F.2d 298, 300-01 (5th Cir. 1985).  Here, the ALJ found the Grids directed a finding of not disabled.  The ALJ specifically stated his determination that there were a significant number of jobs existing in the national economy that plaintiff could perform was "made in conjunction with the Medical-Vocational Guidelines in Appendix 2, Subpart P, Regulations No. 4." (Tr. 20).  The "existence of jobs in the national economy is reflected in the 'decisions' shown in the [Grid] rules."  20 C.F.R. Pt. 404, Subpt. P, App. 2 200.00(b).  The ALJ was entitled to rely exclusively on the Grids in determining there was other work plaintiff could perform after finding plaintiff suffers from only an exertional impairment, to wit: degenerative disc disease of the lumbosacral spine.  Plaintiff has not argued the Grids were not applicable to plaintiff, nor has he argued that use of the Grids was precluded by the ALJ's findings, or that the Grid rule utilized did not direct a conclusion of "not disabled."  Plaintiff's first allegation of reversible error is without merit and should be denied.

## B.
## RFC Finding

Plaintiff next argues that although the ALJ's decision contains numerous observations from the record, the ALJ's decision fails to demonstrate anything that might "reasonably be considered substantial evidence of a sufficient residual functional capacity or jobs in the economy suitable" for plaintiff.  Plaintiff argues the matters cited by the ALJ in his decision as support for his finding of

non-disability did not "contradict in any way the large raft of evidence of [plaintiff's] disability" which the ALJ found rendered plaintiff unable to perform his past work. Plaintiff maintains there is no substantial evidence to support the ALJ's RFC finding.

Although plaintiff references many maladies, *i.e.*, in his application for SSI and the supporting reports, plaintiff contended he was unable to do any type of work because of mental problems, hepatitis B and C, diabetes, sleep apnea, acid reflux, digestion problems, chest pain and back problems, the ALJ only found one impairment was severe, *i.e.*, plaintiff's "back problem." The ALJ did, however, further find that even considering <u>all</u> of plaintiff's impairments in combination, including those that were non-severe, that plaintiff was able to perform the full range of light work. The medical evidence of record supports the ALJ's RFC finding.

The ALJ's finding that the medical records did not reflect that plaintiff had any significant functional limitations related to a psychological disorder is supported by substantial evidence. The treatment notes of plaintiff's treating psychiatrist, the only mental health treatment evidence in the record, indicated plaintiff had done well in his psychiatric treatment and gave no indication that plaintiff's psychological diagnoses caused any problems in his daily functioning or ability to work. (Tr. 288, 322, 384). The ALJ thoroughly set forth his rationale for disregarding the one and only treatment note by plaintiff's psychiatrist wherein he opined plaintiff "[i]n view of the chronic and serious nature of his psychiatric condition ...[was] not in a position to hold gainful employment." (Tr. 191-92). The ALJ was entitled to give little or no weight to a treating physician's opinion that is brief and conclusory, and not otherwise supported by the evidence. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Moreover, under the regulations, this type of statement was not binding on the ALJ or given controlling weight because the issue of whether a plaintiff is

"disabled" or unable to work is an issue exclusively reserved for the Commissioner. 20 C.F.R. 410.927(e); *see id.* (a physician's opinion that a claimant is disabled or unable to work is not the type of opinion to be given controlling weight).

Similarly, the medical record does not reflect plaintiff has any significant functional limitations related to a physical condition. The record supports the ALJ's finding that plaintiff's other impairments were not severe, much less disabling. Although the record reflects plaintiff has had numerous diagnoses of various impairments over the years, the medical record does not reflect these impairments, even in combination, prohibit plaintiff from performing the requirements of light work. Moreover, plaintiff does not cite this Court to any specific records he contends demonstrate plaintiff's inability to perform light work in contradiction of the ALJ's RFC finding. Instead, plaintiff merely cites various diagnoses and attacks the ALJ's recitations throughout the decision as being irrelevant and intended only to discredit plaintiff, noting credibility rulings are not evidence. Plaintiff asserts any failure on his part to follow prescribed treatment did not disqualify him from a finding of disability because there was no assertion, in the record, by a treating physician that the prescribed treatment would have restored his ability to work. Plaintiff further contends his failure to recount each and every one of his ailments every time he went to a doctor was not evidence such ailments did not exist. Plaintiff specifically contends that the ALJ's determination of the "quantum of pain" plaintiff experiences by his impairments is unsupported.

The ALJ's recitations in his decision were summaries of the medical record, and explanations as to why the record did not support a finding of disabled, rather than attempts to discredit plaintiff. Based on the record as a whole, there was sufficient evidence to support the ALJ's RFC finding that plaintiff can perform light work despite his impairments. The undersigned

finds the evidence, as a whole, does not support plaintiff's allegations of disabling impairments and/or pain. Plaintiff's second claim is without merit and should be denied.

C.
<u>Combined Effect of Impairments</u>

Plaintiff next appears to argue the ALJ committed reversible error by failing to consider the combined effect of all of plaintiff's ailments. Plaintiff contends it is clear the ALJ did not consider the combined effect of plaintiff's multiple impairments as evidenced by the ALJ's statement, "I decline to address each and every one of Mr. Barfield's claims on his client's behalf or, for that matter, the many other claims [plaintiff] has made during these proceedings." (Tr. 16).

The undersigned notes the ALJ stated he did, in fact, consider the combined effect of plaintiff's multiple impairments. Specifically, the ALJ stated, "I have, nevertheless, considered the current combined impact of all of [plaintiff's] medically determinable impairments, both severe and non-severe, in assessing his current residual functional capacity." (Tr. 19). Prior to this "combined impact" statement, the ALJ had thoroughly discussed plaintiff's multiple impairments that impacted plaintiff's ability to function, including non-severe impairment, *i.e.*, those not having more than a minimal impact on plaintiff's ability to perform basic work activities. Secondly, plaintiff gives undeserved import to the ALJ's preliminary statement, to wit: that such statement constitutes evidence that the ALJ did not consider the combined effect of plaintiff's impairments. The statement was made three pages earlier in the ALJ's decision than the "combined impact" statement cited above, and was a comment to counsel's post-hearing letter. The ALJ correctly found that plaintiff's reports concerning his symptoms and functional limitations had varied considerably throughout the record. The ALJ correctly noted that counsel's post-hearing letter, listing 23

impairments from which plaintiff suffers, although an expansion upon some of the impairments plaintiff alleged in his disability reports and at the hearing, also included a number of physical impairments which plaintiff had not previously alleged in the record or at the hearing. It is important to note that counsel's list of impairments, cited as established, diagnosed conditions, included many ailments reported by plaintiff to the physicians by way of history. Further, counsel's listing repeats similar and/or continuing conditions, for example, hepatitis B and chronic viral hepatitis B; arthritis, osteoarthritis and rheumatoid arthritis; degenerative disc, cervical/lumbar facet arthropathy, and advanced degenerative changes of L-5 to S-1; and torn rotator cuff, rotator cuff repair, rotator cuff re-repair, and "complete undoing of previous surgery." Moreover, for several of the conditions listed in counsel's letter, there was no evidence suggesting the conditions had more than a minimal effect on plaintiff's ability to perform work activities or affected plaintiff's ability to work for any period of 12 consecutive months. Many conditions listed were cited merely as a one-time complaint in a medical record. Other conditions listed were not established in the medical record by medically acceptable clinical or laboratory diagnostic techniques. The ALJ's statement, by way of explanation, that he declined to individually address each and every ailment ever complained of by plaintiff or those ailments referenced in counsel's letter which were not sufficiently supported or which were not shown to have affected plaintiff's ability to work, did not constitute reversible error, and plaintiff has not sufficiently shown legal error on the part of the ALJ.

D.
Credibility Determination

It is well settled that in any social security case, the statutorily mandated function of the ALJ

includes weighing the evidence and assessing the credibility of the witnesses. *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) ("The Secretary, not the courts, has the duty to weigh evidence, resolve material conflicts in the evidence, and decide the case."). This Court is not permitted to re-weigh the evidence, rather, this Court's role is limited to determining whether substantial evidence exists in the record to support the Commissioner's decision and whether any errors of law were made.

At the hearing before the ALJ, during the preliminary questioning by the ALJ regarding whether plaintiff received public assistance, plaintiff volunteered, "I can't work. I got a statement from the doctor that says that I can't maintain any gainful type of work and I really can't." Plaintiff advised his only financial support is through his common law wife, who is "almost bedridden" and receives disability, and his mother. Plaintiff testified he had hearing problems (having to read lips a lot of the time), Hepatitis C, non-insulin dependent diabetes, acid reflux syndrome, lack of stamina, problems breathing, asthma, previous surgeries on his left knee and right shoulder, bipolar disorder, antisocial disorder and, upon the ALJ's prompting, a back problem. Plaintiff testified he believed the Hepatitis C "zap[ped] [his] energy a little bit."[3] Plaintiff advised he did not use canes or crutches to help him around and that he did not drive. Plaintiff testified he does the housework, averaging about 2 hours a day, but that it takes a long time for him to do it because he has to sit down. Plaintiff explained vacuuming badly hurts his back. Plaintiff advised he does not do any work outside, explaining he is "not supposed to be in direct sunlight" because his psychiatrist told him certain medications he is taking would "toxify" his body. Plaintiff testified he suffers pain in his lower back and legs, and shoulder and collarbone every day, all the time, and would like to ask

---

[3]Plaintiff had a negative RIBA (recombinant immunoblot assay) test in June 1999 indicating an absence of Hepatitis C antibodies. Tr. 336, 378. Plaintiff "therefore does not have hepatitis C." Tr. 379. Plaintiff also had normal liver function tests.

for more pain medication but that his doctor thinks he "might just be wanting to get the [pain relieving] drug itself thinking that [he] might be a drugie," even though he is not.  Plaintiff advised that hydrocodone relaxes plaintiff enough so that he can lie down, but that it only eases the pain rather than eliminating it.  Plaintiff acknowledged he would not be able to work while taking hydrocodone because it affects his mind.  Plaintiff stated he was not taking hydrocodone at the time of the hearing.

Plaintiff testified he cannot lift anything over 20 to 25 pounds, Tr. 492, or more than 30 pounds.[4]  Tr. 495.  Plaintiff stated he could not lift up anything over 10 pounds with his arms extended.  Plaintiff acknowledged he does the shopping but explained he usually just purchases what is going to be eaten that day.  Plaintiff testified he spends the day, starting at about 7:00 a.m., "mostly watching TV."  Plaintiff averred he cannot walk very well, explaining his hips, knees and ankles are "bad."  Plaintiff advised he bathes, grooms and dresses himself, including putting his shoes and socks on although it is a difficult task.  Plaintiff advised he feeds himself but his appetite is poor.  Plaintiff acknowledged his sleep was okay with medication, but stated his wife wakes him throughout the night because he stops breathing as a result of sleep apnea.  Plaintiff testified he has to lie down and sleep for about 1 ½ - 2 hours each day.  Plaintiff stated he also gets drowsy just sitting around and has to get up and move around.  Plaintiff testified he is only able to sit 15 minutes at one time (explaining if he sits any longer than 10-15 minutes his feet and legs start tingling), can only stand for about 10-15 minutes, and spends his day alternating between sitting and standing.  Plaintiff stated he can only walk about a block and a half, and at that distance he is "near winded."  Plaintiff stated he could not kneel, bend over without support, squat, or go up and

---

[4]In a medical record dated November 3, 2003, plaintiff advised his physician he was lifting a 125-pound object when he turned wrong and re-injured his back.  Tr. 471.

down steps without a handrail. Plaintiff stated he has trouble holding onto things and problems gripping. Plaintiff acknowledged he smokes a pack and a half of cigarettes a day, down from four packs a day two years ago. Plaintiff described his dumping syndrome impairment as requiring that he go to the bathroom within 15 minutes after eating, and that if he were doing ordinary work, he would have to stop what he was doing and go to the restroom every 15 to 30 minutes for the whole day.

Plaintiff testified his bi-polar diagnosis affects his ability to work because he is unable to keep up with other workers and does not comprehend how the other workers maintain their pace. Plaintiff stated he has problems with his memory, explaining he can only remember one step instructions. Plaintiff also opined he is unable to get along well with co-workers because they feel plaintiff he is not performing his job satisfactorily. In summary, plaintiff testified:

> Well, I'd like to work but I can only do so much and I feel so belittled that I can't do it. I love doing mechanic work but I can't – it's like I'll work ten minutes and then I have to go sit down. And then just 15 minutes later I have to get up because my legs and feet start getting numb. And then I go out there and do a little bit more. So if it takes an hour to change a water pump on a vehicle it's going to take me three or four because I've go to take them – breaks in between.

The ALJ determined there was no evidence in the record to support plaintiff's claims of limitations other than his own statements in disability reports to the Administration and his testimony at the hearing. The ALJ found plaintiff's allegations were not credible. The ALJ, in his findings, found plaintiff's allegations regarding his subjective symptoms and functional limitations were not wholly credible.

Although not stated as a ground, plaintiff possibly appears to argue the ALJ erred in his determination that petitioner's testimony lacked credibility. Plaintiff contends the ALJ's attempt to discredit plaintiff by referencing plaintiff's numerous attempts to obtain prescriptive pain

medications was not, in fact, discrediting evidence.  Plaintiff also contends the ALJ wrongfully used plaintiff's prescription drug use as an issue to impugn his veracity because the ALJ knew he could not disqualify plaintiff from a disability finding based on drug addiction.  Plaintiff further complains the ALJ erred in not citing a "single" contradictory and inconsistent statement made by plaintiff in the record to support his determination that plaintiff's allegations of limitation were not wholly credible.  Plaintiff also complains of the ALJ's assertion that plaintiff's medical records reveal plaintiff has misrepresented his medical condition and history to his health care providers in an effort to obtain narcotic pain medication.  Specifically, plaintiff complains of the ALJ's failure to allege what the "misrepresentations" were.  Plaintiff contends the only representations made to obtain narcotic pain medications were that he was in "great pain, and needed relief," and that the ALJ implicitly acknowledged plaintiff "has significant pain so bad that he could no longer perform any of his past relevant work."

The question of whether plaintiff was disabled in the Social Security context is a unique issue and is to be determined by the ALJ subject to limited review under the substantial evidence standard.  The credibility assessment of witnesses, including a claimant, is a matter particularly within the province of the ALJ and the Court cannot substitute its judgment for the ALJ's unless that determination has no evidentiary support whatsoever.  Here, prior to finding plaintiff's statements regarding his physical limitations were not credible, the ALJ cited plaintiff's medical evidence of record, and noted the lack of findings which would support a severity finding with respect to nearly all of plaintiff's reported impairments.  The ALJ then attempted to bolster the lack of objective findings to support the severity of plaintiff's impairments by noting what he perceived as inconsistencies in the record, less than honest activity on plaintiff's part and contradictory

statements by plaintiff. The ALJ committed no legal error in such elaboration when a finding of lack of credibility based on the objective medical evidence has been made. Further, the medical evidence from plaintiff's treating physicians, as a whole, although multitudinous, appears to be consistent with the ALJ's determination that the objective medical evidence does not support plaintiff's allegations of severe limitation from his ailments. Even as early as April 9, 1999, plaintiff's primary treating physician reported, "The patient makes it clear today that he is not able to hold a job. He states that his work stamina is about 15 minutes. I am not aware of any diagnosis which would cause him to be labeled as 'disabled,' though I am not a disability doctor." Tr. 387. The ALJ was entitled to rely on this and similar evidence from plaintiff's treating physicians.

Further, the ALJ discounted the sole document completed by plaintiff's treating psychiatrist on September 5, 2002 indicating plaintiff could not work and found the conclusion of inability to work inconsistent with the psychiatrist's other treatment notes. Although the findings and opinions of treating physicians are entitled to great weight, they are not unassailable. The ALJ is responsible for weighing the evidence and was entitled to make the determination he made and discount the treating physician's single "inability to work" determination. The undersigned finds the ALJ's determination was supported by the evidence in light of the psychiatrist's clinical treatment notes to the contrary. Here, treatment notes were inconsistent with the "inability to work" assessment submitted. Conflicts such as these are for the ALJ to resolve. Plaintiff's claim, if in fact he is making one concerning the ALJ's credibility finding, is without merit and should be denied.

## V.
## CONCLUSION

The only issue here is whether the ALJ's findings are supported by substantial evidence, as

that term is defined under the Act. Here, the ALJ's findings have sufficient evidentiary support and the determination of not disabled is not reversible.

## VI.
## RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of SSI benefits be AFFIRMED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of March 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States

District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).